**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**CHRISTOPHER JUSTIN JONES**                                                    **PLAINTIFF**

**V.**                                                          **CASE NO. 1:03CV670**

**UNITED STATES OF AMERICA**                                                  **DEFENDANT**

## MEMORANDUM OPINION

On September 19, 2005, this Court conducted a bench trial in the above-styled case. The Court is now prepared to enter its final judgment.

The plaintiff is Christopher Justin Jones, a Mississippi resident who was injured on December 24, 2002 when his automobile collided with that of Susan Driver, a rural mail carrier employed by the U.S. Postal Service. Jones filed suit under the Federal Tort Claims Act ("FTCA"), claiming that Driver, while driving over a bridge, negligently crossed the centerline and collided with his vehicle. The Government, on Driver's behalf, answered that the accident was caused by Jones' own negligence. On April 27, 2005, the Government moved for summary judgment, arguing that the unrebutted testimony of its expert witness, Brady McMillen, conclusively demonstrated that Jones was 100% liable for the accident. In an order dated September 14, 2005, the Court denied that motion, concluding that liability in this case turned on issues of witness credibility which could not be resolved in advance of trial. Having now heard all the witness testimony and reviewed the exhibits, the Court is prepared to rule.

## CONCLUSIONS OF LAW

There are no disputed issues of law relevant to the disposition of this case, which turns entirely on disputed issues of fact surrounding the routine traffic accident described above.

Mississippi substantive law is controlling.

## FINDINGS OF FACT

The accident occurred on December 24, 2002 near Glen, Mississippi, a small community in Alcorn County just east of Corinth. The impact took place on a narrow bridge on County Road 331. Although Jones asserts that the bridge was one-lane only and that motorists attempting to cross it were required to yield the right-of-way to motorists coming from the other direction, he offers no support for this conclusion, and the bridge, according to photographic evidence is obviously not so narrow that two cars would be unable to pass.

While Jones and Driver clearly disagree about how the accident occurred, the Court is persuaded by the testimony of the Government's expert witness, Brady McMillan, who also works as Director of Accident Reconstruction for the Mississippi Highway Patrol. As a threshold matter, the Court is fully satisfied that McMillan's background and experience satisfies the requirements of Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as modified in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), which the Mississippi Supreme Court has recently adopted as the standard for determining the admissibility of expert witness testimony. See Mississippi Transp. Com'n v. McLemore, 863 So.2d 31, 35 (Miss. 2003)(adopting modified Daubert standard in place of prior general acceptance test set forth in Frye v. United States, 293 F.1013, 1014 (D.C. Cir. 1923). Under the two-pronged modified Daubert test, the Court must determine (1) that the expert testimony is relevant and will "assist the trier of fact," and (2) that the proffered testimony is reliable. McLemore, 863 So.2d at 38. Despite vigorous voir dire and cross-examination of McMillan by plaintiff's counsel, the Court is satisfied that McMillen satisfies both prongs of the Daubert test.

The first point raised by McMillan addresses the location of the two vehicles at the time of impact. The undisputed testimony of McMillen, Driver and Jones indicates that Driver's vehicle came to a rest completely on her side of the road (i.e., the right lane as depicted in Exhibit P1) and was not moved until after police arrived on the scene. Jones' vehicle, on the other hand, apparently came to a rest in the middle of the lane, and while Jones did back his vehicle up just enough to allow him to exit it, he concedes that he moved it back in a straight line. The Court is persuaded by preponderance of the evidence that, at the time of the impact, Driver's vehicle was completely in the right lane and Jones' vehicle was splitting the left and right lanes.

Next, McMillan testified that in his expert opinion, the arrangement of the contact damage on the two vehicles proved that Jones must have hit Driver. If Jones had been stationary at the time of impact (as Jones claimed on direct examination), Driver could only have struck Jones' truck and produced that arrangement by approaching from a starting point even farther to the right of her final resting position. Since Driver's final resting position was at the rightmost edge of the bridge, Jones' description of the accident would have required Driver to have moved from a position off the bridge and suspended in mid-air, an obvious impossibility. The Court concludes, by preponderance of the evidence, that Jones actually ran into Driver, crossing over into her lane at an angle.

Jones also claims that Driver approached him at a high rate of speed. This testimony is also belied by that of McMillan, a trained tactical driver. McMillan testified that he attempted to drive onto the bridge following Driver's course at 30 miles per hour in order to test Jones' assertion that Driver was traveling at an excessive rate of speed. However, McMillan was forced to abort his attempt because there is a hair-pin turn at nearly a 90 degree angle just prior to the entry onto the bridge from that direction. According to McMillan, it would not be possible to take that turn at

3

speeds in excess of about 15 miles per hour without losing control of the vehicle entirely. McMillan also testified that the type of damage to the two vehicles is consistent with a low-speed impact rather than one in which a vehicle was traveling at an excessive rate of speed.

McMillen also undermined Jones' claim to have seen Driver as she came around the curve onto the bridge. According to McMillen's testimony, at Driver's end of the bridge, the curve is covered by thick vegetation, while at Jones' end, the bridge ends in a steep incline resulting in an 8-foot drop in elevation. Consequently, it is physically impossible for motorists coming from opposite directions to see one another until both are on the bridge, contrary to Jones' testimony.

At trial, plaintiff's counsel made much of markings left on the bridge by Driver's vehicle which were referred to as "skid marks." McMillen testified that he personally examined those marks at the accident scene and concluded that they were not skid marks but rather tire impressions made by the vehicle moving over loose soil and gravel on the bridge. Such tire impressions are distinct from skid marks which are caused by rubber burning off a vehicle's tires because the brakes have been slammed and the wheels are locked. Tire impressions such as those left by Driver's vehicle are more consistent with someone traveling at a normal rate of speed than with someone traveling at an excessive rate of speed who then slams on her brakes. In light of the foregoing, the Court finds by preponderance of the evidence that Susan Driver was not traveling at an excessive rate of speed at the time of the impact.

Plaintiff's counsel also attempted to use the tire impressions to demonstrate that when Driver entered the bridge, she was in the left lane (as depicted on Exhibit P1). McMillen agreed with this statement, but claimed that, due to the layout of the bridge and the sharp turn leading up to it from Driver's direction, it was very difficult to enter the bridge without crossing over into that lane

4

somewhat. McMillen testified that, in his expert opinion, Driver was completely in her proper lane at the time of the impact, and the Court finds that the Government has proved by preponderance of the evidence that this was the case.

Having concluded that Driver was not speeding, that Driver was completely in her own lane at the time of the impact and that Jones was driving in the middle of the lane when the impact occurred, the Court finds for the defendant on the question of liability and assigns 100% of the fault in this accident to the plaintiff. The Court, therefore, is not required to proceed to the issue of damages.

## **CONCLUSION**

In light of the foregoing, it is hereby ORDERED that judgment be entered in this case in favor of the defendant, the United States of America; that the plaintiff, Christopher Justin Jones, take nothing; and that this case is DISMISSED in its entirety. A separate order to that effect shall enter this day.

This is the 30th day of September, 2005.

       **/s/ Michael P. Mills**
       **UNITED STATES DISTRICT JUDGE**